Mr. Justice Cox
delivered the opinion of the court:
It appears that Leonard S. Chapman, being desirous of purchasing and improving certain lots of ground in square 193, and not having the means of doing so himself, made an arrangement with the defendant, George W. Clark, hy which he was to be able to accomplish his object. He thereupon purchased the lots from one Milburn, at the rate of thirty-five cents per square foot, amounting to $4,588.50, of which $588.50 was paid in cash, which he obtained from the defendant, and for the balance he gave his notes. He took the title in his wife’s name, and he and his wife joinbd *528 in the execution of a deed of trust to William J. Miller, to secure the notes for the unpaid purchase money.
On the same date Chapman and wife conveyed the same property to Clark, by deed absolute upon its face, although in fact it was subject to a collateral agreement under seal between the parties, somewhat-peculiar in its terms. By the provisions of this agreement, the lots were to be subdivided according to a certain plat, making five building lots, fronting on 15th street west; three fronting on Corcoran Street, and three others fronting on an alley in the rear.
The complainant was to erect five houses on the lots fronting on 15th street. The defendant, Clark, was to advance the money for that purpose, to the amount of $2,200 on each house, payable in instalments as the work progressed. It was agreed that after the houses were completed, the defendant would convey the houses to the complainant on the payment of the sum of $3,000 for each house, and in addition thereto a sum equal to interest at the rate of 10 per cent on all the money that might be advanced by the defendant towards the completion of the houses;
It will be observed here, that this $3,000 embraced the $2,200 which was to be advanced for the completion of the house on each lot, and also $800 as the price of the ground at forty cents a foot, the original price having been thirty-five cents. The houses were agreed to be completed by the first of September, 1880'.
It was further agreed that at any time before the first of September, 1880, the defendant would also convey to the complainant the vacant lots, on the payment of a sum equal to forty cents per square foot.
Now, if the defendant had advanced the whole amount of the purchase money, $4,588,50, and if this arrangement had been carried out effectually within the period between the fourth of February sand the first of September, 1880,. the defendant would have received back not only his advances for the construction of the houses, with 10 per cent *529 interest, but also all the money advanced for the purchase of the ground, and, in addition to that, the sum of $655.50, equivalent to 14 per cent interest on the whole purchase price of the ground, a rate of a little over 2 per cent a month. In fact, however, there were only two notes that fell due within that period, for the purchase money, amounting to $2,250. This, added to the cash payment of $588.50, makes $2,813.50, which the defendant was expected to advance within that time.
Then it was'further agreed that if Chapman, the- complainant, should fail to pay for the lots by the first of September, 1880, he should pay an additional one cent per foot per month until he actually paid the money and took a deed. This, in addition to what I have already mentioned would give him 2-|- per cent per month on the whole purchase money for the ground, after September 1, 1880, until repayment of the principal.
Building was commenced, but did not progress very smoothly. More money had to be raised by deeds of trust, in order to complete the houses. Part of this money went into the hands of the defendant, Clark, and part into the houses. The houses were not finished until some time in 1882, I believe. The defendant then took possession of them and rented out one or more of them.
After that the complainant filed his bill, claiming that his deed to defendant, although absolute in form, was intended to be a mortgage; praying to have an account stated, and alleging that the defendant was in his debt.
Thereupon this order was passed:
“This cause came on to be heard at the present term, and, without deciding any of the questions involved, and reserving all equities of the parties, it is, this 8th day of December, 1885, Ordered That this cause be, and the same is hereby referred to the auditor of the court, with instruc•tions to take and state an account between the parties, in relation to the matters stated in the pleadings. In stating said account, the auditor shall consider the said pleadings *530 and proofs already taken, as well as any other legal testimony which may be offered by either party.”
The auditor reported, and exceptions were filed by both sides, and those exceptions have come before us for consideration.
The first question made is, whether the stipulation for the payment of an additional cent a foot, per month, in case of complainant’s failing to take and pay for the lots by the first of September, 1880, applied to all the ground; or only to the vacant lots. The defendant asserts that it was to apply to the whole ground ; that he was entitled to receive that additional forfeiture, as it is called, with reference to the whole property, the improved lots and the others. But the complainant claims that it was limited to the vacant lots.
• The complainant further claims that this forfeiture amounts to usurious interest. That puts upon us the duty, to some extent, of deciding upon the merits of the case, and looking to the contents of the contract, in order to see whether it was a contract for the payment of usurious interest or not.
The defendant says- that it was not, and, in part support of that view, refers to the fact that there was no obligation upon the part of the complainant to take these lots at all; that it was merely an option with him to take them and pay for them if he chose; and, therefore, that it was not the case of a loan to be repaid, but simply an option to purchase so much real estate, and that the whole transaction was a joint speculation in real estate.
The language is somewhat ambiguous, and it is not very clear whether the stipulation in question referred to all the property or not; but the fact that there is no express obligation to take these lots is not conclusive upon the question whether this was a loan of money or speculation upon joint account. In the case of an ordinary mortgage, for money borrowed by me, if 1 give no note and make no covenant to repay, it is optional with me whether I will redeem the property or allow the mortgage to be foreclosed. And yet, *531 if I borrow the money, and the mortgage is simply conditioned to be void on repayment with illegal interest, nobody will question that it is, to all intents and purposes, a loan; so that the absence of an obligation to repay the money is not conclusive.
That question came before the Supreme Court of the United States in Scott vs. Lloyd, reported in 9 Peters. Moore advanced to one Scholfield $5,000, for the purchase, as it was expressed, of an annuity, and Scholfield executed a deed for a perpetual rent or annuity of $500, payable out of his land — 10 per cent, on the amount received — with authority to distrain. There was no covenant on the part of Scholfield to repay that money, but it was provided that at any time after five years he might repay it, and in that way redeem the annuity. Moore bound himself in that contingency to release the property from the annuity. The absence of a covenant to repay was relied upon as evidence that this was a purchase and not a loan. But the Supreme Court held that it was entirely inconclusive; that it was always an open question for a jury whether or not it was a disguise or contrivance for the purpose of securing illegal interest, whatever might be the form of the transaction.
■ And so, in this case, we must look at all the circumstances, to see whether this was, as claimed by the defendant, a speculation in real estate on joint account, or an obligation to pay money at usurious interest.
In this case it will be observed that the defendant declined to assume the responsibilities of purchaser of the ground, but insisted upon the complainant buying the property in his name; and then he took an absolute deed to himself, subject to the deed of trust to secure the deferred payment, under the stipulations of the contract between them. The defendant agrees to advance so much money, and when so inuch is repaid to him he will convey the property to the plaintiff. It is not to be conveyed to the complainant in trust or on joint account, and there is to be no sale on joint account; there is to be no statement of profits; but the complainant is to pay back a certain sum to the defendant, *532 which, is to be the same whether the land should rise much or little or not at all in value. It is perfectly demonstrable, therefore, that there was no calculation made with reference to any division of profits. The amount agreed was to be paid in any event.
The feature of the certain return to the defendant, upon the receipt of which he is to convey the property to the complainant, together with other circumstances, such as that the complainant was to keep the property insured, pay taxes and exercise other acts of ownership, I say that principle of certainty in the return is conclusive of the question that this was, in substance, a contract for an advance of money, and not a speculation on joint account.
The amount to be paid to the defendant is so nicely calculated as to amount, up to the first of December, to between 2 and 2-J per cent, per month, except on the construction of the houses, with reference to which it was expressed to be 10 per cent.
It is manifest to us, therefore, that this was a contract for the advance of money at eX01’^311^! usurious interest ; and if the defendant were an actor in this case, under our statute he could not recover a dollar; he could recover only the principal sum advanced, but not a dollar of interest. The defendant, however, not being an actor, but the plaintiff, (the borrower) being the actor, the latter is required to do equity, and that, we understand, in such cases is to pay the interest which the law has fixed as right and proper.
The auditor’s report, therefore, so far as it sustains this transaction, will be overruled; the exception will be sustained, and the auditor will simply have to credit the defendant with legal interest on his actual advance, and not interest on the round purchase price — which may or may not have been paid by him.
The next question is whether interest at the rate of 10 per cent, on the advance for the construction of the houses was to stop on the first of September, 1880, or was to continue until those advances were repaid. It seems to us, from the language of the contract, that the conveyance of *533 the property back to the complainant was contemplated to be made as of the first of September, 1880, and the contract interest is up to that date. Under the decision of the Supreme Court we cannot allow interest at that rate beyond the date specified in the contract, and can only allow legal interest after that date.
The only other question made is as to the payment of the $500, claimed to have been made by the complainant to the defendant, which the auditor has given him credit for, and which is the subject of the third exception.
With reference to that, we have concluded to sustain the auditor’s report and overrule the exception, as the evidence is somewhat contradictory.
The case will again be referred to the auditor for the purpose of enabling him to make his report conform to this opinion.